IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY D. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-1806-MAB |
| | ) |
| ANGELA WALTER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Angela Walter's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 51) and Plaintiff Larry Johnson's Motion for Preliminary Injunction (Doc. 52). For the reasons set forth below, Defendant's Motion for Summary Judgment on the Issue of Exhaustion is DENIED (Doc. 51) and Plaintiff's Motion for Preliminary Injunction is DENIED as MOOT (Doc. 52).

### BACKGROUND

Plaintiff initially filed this civil rights action on May 24, 2024, pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Menard Correctional Center (*see* Doc. 1; *see also* Case No. 24-cv-1385-DWD). Plaintiff then filed an Amended Complaint, which the Court conducted a preliminary review of on July 31, 2024 (*Id.*). At that time, the deliberate indifference claim Plaintiff is currently proceeding upon against Defendant was severed into this distinct action for the reasons stated in the Court's Order (*see* Doc. 1 at pp. 10-11). Accordingly, on July 31, 2024, this action was initiated, and Plaintiff's Complaint was filed (Doc. 2).

As applied to Plaintiff's claim in this case, Plaintiff's Complaint alleges that he had EKGs taken after he began suffering from extreme chest pain at Menard (Doc. 10, p. 2). Specifically, Plaintiff alleges that Defendant conducted EKGs on November 24, 2023, and February 1, 2024, after Plaintiff was removed from his cell due to a medical emergency (*Id.*). After conducting the EKGs, Defendant told Plaintiff she did not know what was causing his pain, but it was not his chest (*Id.*). Plaintiff alleges Defendant provided no further treatment and conducted no further investigation into his medical condition. (*Id.*). As a result, Plaintiff suffered and continues to suffer from severe pain in his neck, chest, right shoulder, arm, hand, and back (*Id.*).

The Court conducted a preliminary review of the severed Complaint pursuant to 28 U.S.C. § 1915A in August 2024 (Doc. 10). Ultimately, Plaintiff was permitted to proceed on the following claim:

> **Count 1:** Eighth Amendment deliberate indifference claim against [Angela Walter] for refusing to further investigate Johnson's chest pain in November of 2023 and February of 2024.

(*Id.* at p. 10).[1]

On May 21, 2025, Defendant filed the instant Motion for Summary Judgment on the Issue of Exhaustion, along with a partial record of supporting exhibits (*see* Doc. 51 at p. 2, fn. 3; Docs 51-1 thru 51-6). Plaintiff filed a Response in Opposition, which contained numerous supporting exhibits therein, on June 10, 2025 (Doc. 53).

---

[1] The Court's Merit Review Order named Jane Doe #2 as the defendant this claim was raised against (*see* Doc. 10 at p. 1). Plaintiff later identified and substituted Defendant Angela Walter for Jane Doe #2 (*see* Docs. 26, 27, 38).

Meanwhile, on June 2, 2025, Plaintiff filed the instant Motion for Preliminary Injunction, which also contains several supporting exhibits (Doc. 52). Defendant then filed a Response in Opposition to Plaintiff's Motion on June 16, 2025 (Doc. 54). Neither party filed a reply brief in further support of their respective motion.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION**

I.     *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

II.     *Exhaustion Requirements*

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the

procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

### III.   IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden

reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

IV.   *Analysis of Defendant's Motion for Summary Judgment on the Issue of Exhaustion*

Defendant argues she is entitled to summary judgment because Plaintiff failed to fully exhaust any relevant grievance prior to initiating this action (*see generally* Doc. 51). In response, Plaintiff avers that he filed a grievance, Grievance No. K4-1123-1772, which directly identified his claim against Defendant, but administrative remedies were subsequently made unavailable to him based upon the prison's lengthy delay in reviewing his grievance (*see generally* Doc. 53).

As an initial matter, the Court finds that Grievance No. K4-1123-1772 identifies both Defendant Walter and Plaintiff's claim against her. For instance, in that Grievance, Plaintiff grieved that he was sent to the HCU on November 24, 2023, and was treated by Nurse Angie "who performed an EKG." (Doc. 53 at p. 22). Defendant told Plaintiff that his injury and pain was not the result of a heart condition, as "determined by the EKG." (*Id.* at p. 23). She then put Plaintiff on a long waitlist to see a doctor, gave him some Ibuprofen and Tylenol, and sent him back to his cell (*Id.*). Grievance No. K4-1123-1772 later states, "If Nurse Angie believes that my pains are from injuries outside of a heart condition from her performing an EKG, she should have either given me further medical treatment to find the source of the pain … or sent me to an outside hospital consider my statements to her, injuries, pain and the fact that I was sent to the HCU on as an emergency and not on any list." (*Id.*). The Court will not belabor the point, Grievance No. K4-1123-1772 plainly identified Defendant Angela Walter (i.e., "Nurse Angie") and Plaintiff's deliberate indifference claim raised against her (*Id.*).

Therefore, the only question is whether Plaintiff exhausted his available administrative remedies for Grievance No. K4-1123-1772 prior to filing suit. Defendant argues neither Grievance No. K4-1123-1772, nor any other grievance filed by Plaintiff, exhausted Plaintiff's administrative remedies because none were appealed to the ARB prior to Plaintiff filing his Complaint in this action on July 31, 2024 (*see* Doc. 51 at p. 6). Notably, Plaintiff concedes that he did not appeal Grievance No. K4-1123-1772 to the ARB prior to filing suit (*see generally* Doc. 53). However, Plaintiff argues that he was no longer required to exhaust each subsequent step of the administrative process for Grievance No.

K4-1123-1772 because more than eight months had passed without a response from prison officials by the time his Complaint was filed in this action (*Id.*).

The Court agrees with Plaintiff. Pertinently, Plaintiff filed Grievance No. K4-1123-1772 on November 29, 2023 (Doc. 53 at pp. 22-23). It was marked as received by the Warden on November 30, 2023, and subject to expedited review because it was deemed an emergency (*Id.*). After being deemed an emergency, Grievance No. K4-1123-1772 was forwarded to the Grievance Officer for expedited review on December 4, 2023 (*Id.* at pp. 20-21). Yet, inexplicably, as of June 6, 2024, when Plaintiff filed his Amended Complaint in Case No. 24-cv-1385-DWD, he had not received any further response to Grievance No. K4-1123-1772. Likewise, when his claim against Defendant was severed into this case on July 31, 2024, Plaintiff still had not received a facility-level response to Grievance No. K4-1123-1772 (*see* Docs. 1, 2). Finally, on November 20, 2024, approximately one year after filing Grievance No. K4-1123-1772, the Grievance Officer and Warden finally reviewed and returned Plaintiff's grievance (Doc. 53 at p. 21).[2]

This Court dealt with a similar issue in *Bentley v. Morris*, wherein more than eight months passed before the plaintiff received a response to his grievance from the grievance officer and the warden. *See* 3:23-CV-48-MAB, 2025 WL 894947 (S.D. Ill. Mar. 24,

---

[2] The Grievance Officer's report even acknowledges that Plaintiff's grievance was filed on November 29, 2023, but not reviewed until November 19, 2024 (Doc. 53 at p. 21). And, while not relevant to the Court's instant analysis because the process was rendered unavailable by the lengthy delay, the Court also notes that the decision of the Grievance Officer and Warden is confusing at best (*Id.*). For instance, the Grievance Officer stated that Internal Affairs had opened and closed a case and found it to be "substantiated." (*Id.*). Yet, the Grievance Officer then recommended Plaintiff's grievance be denied and the Warden concurred (*Id.*). It is not clear to the Court why a grievance would be denied when the reviewing officials learned that the case addressing it had been substantiated.

2025). Pertinently, given the lengthy delay, this Court found the plaintiff's grievance should be treated as having been procedurally exhausted because:

> Pursuant to section 504.830(e) of the Illinois Administrative Code, "[t]he Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances." As the Seventh Circuit has explained, however, section 504.830(e)'s two-month deadline is "aspirational," not mandatory, and parties should not make a beeline for the courts when they don't receive a response within two months. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). "An aspiration to act quickly 'whenever possible' does not mean that the prison system tosses out the papers and closes the files after two months[.]" *Id.* Conversely, however, the Seventh Circuit has more-recently emphasized that how long a prisoner must wait for an administrative response also depends upon the complexity of the issue being grieved and any information or updates conveyed to the grievant. *See Tullis v. Shaw*, 676 Fed. Appx. 580, 582 (7th Cir. 2017); *Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (finding a two-month period of silence rendered administrative remedies unavailable specifically because the prisoner had no other reason to believe anyone was looking into his grievance). For this reason, the Seventh Circuit held in *Tullis* that "[g]iven the scant record in this case, we think it premature to decide whether, under *Ford*, Tullis should have waited longer for the Director to act on his appeal before he filed suit." *Tullis*, 676 Fed. Appx. at 582. "Tullis received no communication regarding his pending appeal for almost nine months. Yet the defendants have never offered any explanation why the appeal took so long." *Id.*
>
> Here, Defendants have not mentioned Grievance No. 57-1-22 in their motions, let alone attempted to explain why it took over eight months for Plaintiff to receive a response to this grievance. Therefore, given this lengthy delay and Defendants' failure to provide a justification for it (or to provide other documents demonstrating that prison officials updated Plaintiff as to the status of this grievance), the Court will treat Grievance No. 57-1-22 as having been procedurally exhausted.

*Id.* at *4.

The same analysis and conclusion apply here. Plaintiff filed his grievance in November 2023 (Doc. 53 at pp. 22-23). Yet, at the time of this action's initiation, more than

eight months had passed without a response to Grievance No. K4-1123-1772 (*Id.* at pp. 21-23).[3] Under such circumstances, the Court finds the administrative review process was rendered unavailable to Plaintiff and therefore, Grievance No. K4-1123-1772 was exhausted by the time Plaintiff initiated this action. *See id.*

Moreover, the Court is not persuaded by Defendant's argument that Plaintiff knew how to fully exhaust a grievance as demonstrated by the numerous, other grievances he filed during the same time frame which he fully exhausted by appealing to the ARB (*see generally* Doc. 51). Crucially, rather than support Defendant's argument, this fact further demonstrates why Plaintiff was justified in treating the grievance process as having been rendered unavailable for Grievance No. K4-1123-1772. Specifically, by seeing many of his other grievances be addressed in a significantly shorter timeframe, Plaintiff could reasonably conclude that the administrative review process had been rendered unavailable as to Grievance No. K4-1123-1772. *See, e.g.*, *Lomeli v. Jones*, 3:23-CV-2518-MAB, 2025 WL 2337273, at *6 (S.D. Ill. Aug. 13, 2025) ("Plaintiff filed Grievance No. 207-10-22 over a week before filing Grievance No. 276-10-22. Yet, he received a response to Grievance No. 276-10-22 and appealed it to the ARB long before he heard back on his earlier-filed grievance. Under such circumstances, the administrative review process had been rendered unavailable as to Grievance No. 207-10-22 because the administrative scheme had become so confusing that no ordinary prisoner would know how to navigate

---

[3] And in fact, while not directly relevant to the question of whether Plaintiff exhausted his remedies by the time of filing, he would still have to wait another three and a half months before finally receiving any response (*see* Doc. 53 at p. 21).

it."). Here, as in *Lomeli*, the delay in responding to Grievance No. K4-1123-1772, combined with the drastically shorter facility-level response times for Plaintiff's other grievances, rendered the administrative process so confusing that no ordinary prisoner would know how to navigate it. *See Id.*

Significantly, Defendant's motion does not address Grievance No. K4-1123-1772 and Defendant did not file a Reply in Support of her motion. Had Defendant believed some other reasonable justification existed for the eight month delay in responding to Plaintiff's grievance before this action was initiated, Defendant had the opportunity to make that argument.[4] In this regard, the Court also questions how Defendant concluded that it was an undisputed, material fact that "[t]he grievance records show that, during the relevant time period, Plaintiff did not submit any grievances against Defendant regarding EKGs performed on or about either November 24, 2023, or February 1, 2024." (Doc. 51 at p. 3, para. 8). While the Court takes some issue with narrowing a grievance search to just grievances involving EKGs around certain dates when this action is proceeding upon a broader claim of deliberate indifference to Plaintiff's chest pain in November 2023 or February 2024, the Court finds it even more concerning that Defendant represented to the Court that no such grievance regarding EKGs performed on or around

---

[4] Typically, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, however, such a hearing would not be beneficial because the grievance's filing date, response date, and contents are found in the record, such that the only issue remaining is the legal question of whether the prison's eight-month delay in responding to Plaintiff's grievance rendered the administrative process unavailable.

November 24, 2023, existed when: (1) Plaintiff's Complaint included some records of Grievance No. K4-1123-1772 (*see, e.g.*, Doc. 2 at pp. 34, 41-42); (2) Defendant's own records also documented the facilities' receipt of Grievance No. K4-1123-1772 (*see* Doc. 51-3 at p. 2, Doc. 51-4 at p. 8); and (3) Plaintiff's Response indisputably attached and cited to Grievance No. K4-1123-1772 (Doc. 53 at pp. 19-23).[5]

For all these reasons, the Court finds that Grievance No. K4-1123-1772 identified Plaintiff's claim against Defendant and exhausted all available administrative remedies as to that claim. Accordingly, Defendant's Motion for Summary Judgment on the Issue of Exhaustion is DENIED (Doc. 51).

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I.   *Preliminary Injunction Legal Standards*

A preliminary injunction represents an "extraordinary and drastic remedy" that is available only when "the movant, *by a clear showing,* carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin. & Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Additionally, mandatory preliminary injunctions like the one sought here, which would require an affirmative act by the defendant, are "ordinarily cautiously viewed and sparingly

---

[5] To make matters worse, rather than providing the Court with Grievance No. K4-1123-1772, Defendant summarily stated in a footnote that "[i]n order to avoid filing voluminous exhibits, the Grievances have not been attached to this Motion since none are relevant to the Complaint. A full copy of the Grievances will be provided should the Court wish to review." (Doc. 51 at p. 2, fn. 3). Suffice it to say, Defendant's own, self-serving (and here, erroneous) representation as to what constitutes a relevant grievance is not appropriate evidence for the Court to rely upon when determining whether summary judgment should be granted. In the future, Defense Counsel should take great care to ensure its representations to the Court are accurate and to file all potentially relevant grievances alongside Defendant's motion in order to meet Defendant's burden of proof.

issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)).

A plaintiff seeking a preliminary injunction must demonstrate that he is likely to succeed on the merits of his claim, he has no adequate remedy at law, and that he would suffer irreparable harm if he were not provided the relief sought in his preliminary injunction. *See Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If the plaintiff makes this showing, then the court proceeds to a balancing analysis, weighing the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Ultimately, the plaintiff must show "that the balance of equities tips in his favor." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)). Furthermore, "[u]nder the PLRA injunctive relief to remedy unconstitutional prison conditions must be 'narrowly drawn,' extend 'no further than necessary' to remedy the constitutional violation, and use the 'least intrusive means' to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (quoting 18 U.S.C. § 3626(a)(1)(A)).

II.     *Analysis of Plaintiff's Motion for Preliminary Injunction*

Plaintiff seeks a preliminary injunction "in the form of a transfer out of Menard to a facility that will accommodate Plaintiff's serious medical needs by way of adequate medical attention[.]" (Doc. 52 at p. 12). In support of his request, Plaintiff raises numerous allegations of inadequate medical care and/or deliberate indifference, as well as

retaliation (*see generally Id.*). Defendant has filed a response in opposition which argues Plaintiff's motion for preliminary injunctive relief: (1) is improper because it relates to allegations unrelated to the conduct in this lawsuit; (2) impermissibly seeks to bind the conduct of individuals who are not parties to this lawsuit; and (3) fails to meet the high bar meriting the imposition of such an extraordinary and drastic remedy (Doc. 54 at pp. 2-3).

Ultimately, the Court need not reach the parties' substantive arguments because, after Plaintiff's Motion and Defendant's Response were filed, Plaintiff was transferred from Menard to Pontiac Correctional Center (*see* Doc. 55). Significantly, most, if not all, of Plaintiff's allegations of harm center upon the allegedly inadequate care and retaliatory conduct he was experiencing at Menard (*see generally* Doc. 52). Therefore, Plaintiff's transfer to a different facility provides the relief his motion sought and renders his specific concerns inapplicable. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."); *Jones v. Butler*, 663 Fed. Appx. 468, 470 (7th Cir. 2016) (Finding the plaintiff's "demand for injunctive relief became moot, since Jones demanded and got a transfer" and only his conjecture suggested the possibility of a return to his prior facility). For all these reasons, Plaintiff's Motion for Preliminary Injunction is DENIED as MOOT (Doc. 52).

## Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment on

the Issue of Exhaustion is DENIED (Doc. 51) and Plaintiff's Motion for Preliminary Injunction is DENIED as MOOT (Doc. 52).

This action is now moving beyond the exhaustion of administrative remedies phase. Accordingly, the stay on merits-based discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: January 8, 2026**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**